Court now calls agenda number 3-115-798, People of the State of Illinois Appellant v. Rita P. Are you ready to proceed? Madam Chief Justice, Honorable Justices of the Supreme Court, Counsel, may it please the Court. I am Assistant State's Attorney Alan Spellberg representing the people of the State of Illinois. In the Alfred H. H. case, this Court held that there is no general exception to the mootness doctrine applicable to mental health cases. Instead, what this Court held is that an appellate court must consider the particular facts of each case to see if any of the recognized mootness exceptions apply to that case. Unfortunately, in this case, and in many other cases, the appellate court has effectively adopted a per se exception to the mootness doctrine for mental health cases. Specifically, in Alfred H. H., this Court held that if a defendant has a prior involuntary medication or treatment order or has a prior felony conviction, then by definition, the collateral consequences exception cannot apply. The appellate court, in many cases, including this one, has turned that holding on its head and has held that in the absence of any other involuntary treatment orders, by definition, the mootness doctrine doesn't apply. The collateral consequences exception applies. That clearly cannot be the case, because as this Court held in Alfred H. H., the mootness doctrine is essential to the Court's jurisdiction. The ability for a court to enter a judgment and to review a judgment which is already moot is dependent upon the court's jurisdictional authority. And courts cannot simply decide cases to generate precedent or to provide any therapeutic relief to the Petitioner in the case, to the Respondent in the case. But that's exactly what happens in these cases, where there is no clear collateral consequence associated with any of these cases. In this case, it is beyond any dispute that before the appellate court ever considered the case, in fact, even before the Respondent filed her opening brief in the appellate court, that the matter was moot. The trial court's involuntary medication order lasted only for 90 days, and as this Court recognized in Barbara H. and in Alfred H. H., it was no longer the basis for any adverse action against the Respondent at that point. Nevertheless, the appellate court specifically held that because this was her first involuntary treatment order, the Court could consider the matter under the collateral consequences exception. Wouldn't the capability of repetition be an exception to the moot? Mootness exception? Your Honor, no, not in this case. And the reason why is the factors for the capability of repetition in evading review don't satisfy in this case, as demonstrated by the Alfred H. H. case. Clearly, and the people agree that a 90-day commitment order is too short for a full and complete appellate process to be taken. There's no dispute about that. And yet, as this Court explained in Alfred H. H., that mootness exception requires that whatever the issue being addressed in this case would have some determinative factor for future litigation involving the same litigant. And as it explained in Alfred H. H., a fact-specific, case-specific analysis as to whether or not in their case it was the sufficiency of the evidence cannot satisfy that. Instead, it has to be a determination of a legal ruling of some sort that would have future ramifications. The example that the Court in the Alfred H. H. case gave was the In Re A Minor case involving a newspaper's challenge to a refusal by the trial judge to allow them to prepare and publish the offender's name of a juvenile criminal offense. And what this Court said in explaining Alfred H. H. is that clearly that issue is going to come up again for the newspaper. They will have the exact same issues being presented. They need the ability to be able to litigate and determine whether or not they're allowed to identify those names in a newspaper, in a publication. That is not the same, as the Alfred H. H. case said, that is not the same as a fact-specific finding as to whether or not the allegations supporting the involuntary commitment in that case were sufficient in that case. Likewise, in this case, there is no challenge at all to the sufficiency of the evidence regarding the underlying involuntary treatment. There is no challenge at all to any of the fairness of the proceedings at the trial itself. Instead, the only issue that has ever been identified by Respondent in the appellate court or here is whether or not the trial judge's oral statement at the end of the was not sufficient under the statute, under Section 3816. As we argued in the appellate court and as we argue here, that clearly cannot be the basis for a reversal, because that statute has to be identified as a directory statute as opposed to a mandatory one. Otherwise, what would happen, exactly as Respondent, as Petitioner is asking this Court to do, this Court and other reviewing courts would be parsing the language of a trial judge at the finding stage instead of examining the evidence. It would be focusing upon the thought process of the judge himself instead of whether or not the evidence itself was sufficient to support the finding. It would be examining what the judge said as opposed to what the parties did and whether or not the proceedings were proper under the statutes and under the Constitution. But going back to the mootness for a second, there is, as this Court said in Alfred H. H., in order for the collateral consequences exception to apply, it must be identified that there are some consequences, some collateral consequences which are solely attributable to the order in the case. And as we state in our brief and in our reply brief, that does not exist in this case. There are no collateral consequences which have been identified anywhere in the record that specifically fall upon the Respondent in this case. There are many hypothetical allegations about various licensure or employment restrictions that may exist. But as we point out in our brief and as the United States Supreme Court has recognized, they cannot be simply hypothetical or conjectural. They have to have some basis in the facts of the case. As the U.S. Supreme Court said, they must comport with reality. Likewise ---- Doesn't the Respondent in this case have any previous commitment orders? No, Your Honor. Any previous felony convictions? Admittedly, there are no prior felony convictions. Any history of mental illness? Excuse me. I'm sorry. Any history of mental illness? Yes. There is an extensive history of mental illness. There are no, to clarify, there are no prior felony convictions. And there are no prior involuntary treatment orders. Psychotropic? There is a history of mental illness. Psychotropic medication? In this case, this is an order for the application of the giving of involuntary psychotropic medication. In this case, however, at the same time that this litigation was going forward, there was a petition for involuntary commitment. That was settled at the Respondent's request, and it was converted into a voluntary commitment. Specifically, at that point, after the court ordered the involuntary treatment of the psychotropic medication. It is our position that that by itself, that voluntary commitment, which is very different than an informal admission, as we explain in our reply brief. But that voluntary commitment, which subjects the Respondent to the mental health hospital, that she is there and she cannot be released for at least up to five days, or can be held for up to five days against her will, even after she asks for a discharge. That that itself is a commitment, and that has its own collateral consequences associated with it. And that, because of her voluntary admission, because of her public acknowledgment of a voluntary admission, as we say in our briefs. I thought this Court had decided in the past that the stigma of involuntary admission creates collateral consequences that warrant review. How do you, if those cases exist, how do you distinguish those? Yes, Your Honor. We acknowledge in our briefs, particularly in the N. Ray Hayes case, this Court specifically did hold that the fact of an involuntary commitment carries a significant collateral consequence. But in the Alfred H. H. case, this Court clarified that. It said it is not an automatic, it is not a presumption of collateral consequences at that point. Instead, it's going to be a searching of the record to determine whether or not there are any collateral consequences solely attributed to the order at issue in that case, as they apply to the Respondent in that case. And so we're not disputing that there are never any potential collateral consequences. But instead, that there has to be a demonstration that there are actually collateral consequences. And if the United States Supreme Court held in Spencer v. Kemna the presumption of collateral consequences from a Federal standpoint should be limited solely to criminal convictions, and that for other matters it will not be extended. This Court in the Alfred H. H. left that open. In a footnote, this Court specifically identified that the question of whether or not the party claiming a mootness exception for collateral consequences bears the burden of demonstrating that collateral consequences exist or whether or not they should be presumed. It is our position that this Court should find, like the U.S. Supreme Court in Spencer, that the party claiming the mootness exception bears the burden of demonstrating that the consequences exist. And just to your position is that in most cases, involuntary medication, involuntary commitment, that those orders, those decisions by the Court are not reviewable? I'm not sure I'm willing to say that, Your Honor, that they're not reviewable. What our position is that is that if they are moot after the 90 days have expired, that the party must come forward with a demonstration as to why they, why the collateral consequences exception should apply. And the reason why is that is exactly what this Court does with the other recognized exceptions to the Mootness Act. In particular, in the Hernandez case, dealing with the public interest exception, this Court stressed that it was the burden of the State as the proponent of the exception to demonstrate why those exceptions exist. Otherwise, particularly in a collateral consequences exception, we're left with only hypotheticals and conjecture. As you can see from reading the briefs in this case, there are numerous statutes which place restrictions upon licensure or employment issues when someone has been subjected to an involuntary treatment order. So you're saying there's very, very few possibilities, perhaps, that there could be collateral consequences. You're not willing quite to get to what they would be. But what you're saying is in almost every other kind of case, a finding of involuntary commitment or involuntary medication will never, ever be reviewable. Is that your position in most cases? In many cases, it would not be reviewable, which is by definition what the Mootness doctrine stands for. If a case becomes moot before the appeal can be resolved, then there is no exception. And that's exactly what the Alfred H.H. case addressed, because in that case it was an involuntary treatment, an involuntary commitment. The Respondent in that case claimed simply because it was a mental health case, he was entitled to challenge it on an appeal despite the fact that it was moot. He claimed based upon the therapeutic needs, he would be entitled to challenge it. This Court rejected both of those categorically. And then for the three recognized Mootness exceptions, the collateral consequences, the public interest, and the capable of repetition, yet evading review, the Court held in that case it didn't satisfy that. And so all I'm asserting at this point, Your Honor, is that the collateral consequences exception should be applied the same for all types of cases, whether it's a mental health case or a criminal case or anything else, that it should be applied with the expectation that the Court shouldn't engage in hypothetical analysis as to what the consequences might be. And this is a perfect case of where there are no clearly identifiable collateral consequences anywhere, because as we lay out in our briefs, every potential consequence which was identified by this Court in Alford H.H., which was identified by Respondent in her briefs, already exists based upon her extensive undocumented mental health history, based upon her voluntary admission to the mental health hospital, based upon just the sheer fact as to what the claims are. Importantly, one thing I'd like to point out is that one of the collateral consequences identified in Alford H.H. is the ability to seek out a motion to eliminate to preclude the admission of the prior judgment. As we point in our briefs, that is certainly true. You could file a motion to eliminate to preclude the prior judgment. But importantly, under the rules of evidence, you could also, even if it was never vacated, you could also move to exclude it because civil judgments are by definition improper hearsay and can't be admitted. That's what the rules of evidence provide. But also, if the Respondent were ever called as a witness, her mental health history could certainly be used for purposes of credibility determinations for cross-examination. So there would be very little that would be excluded, if any, based upon a finding in this case. Likewise, though, the appellate court here simply has a per se rule. There's no way to review what goes on in this case as anything other than a per se rule, where the appellate court held that a first-time involuntary treatment order is always subject to an exception to the mootness doctrine. And that is clearly improper in light of Alford H.H. But the other issue, the substantive issue which was raised in this case, which was whether or not the trial court's finding was specific enough under Section 3816. As we argue in our brief, the appellate court erred in finding that that is a mandatory statute, and under the In Re MI case, it should properly be identified as a directory statute. As this Court said in MI, procedural commands in statutes to government actors are presumed to be directory, except in two instances. One is where the statute itself contains negative language calling for a particular consequence for failing to comply. The other is if the rights that the statute was intended to protect would be somehow injured if there is a failure to comply. Neither of those situations occur here. The appellate court didn't engage in any analysis at all. Instead, it simply held that mental health cases under the mental health statute must be strictly construed and must be applied in an appropriate manner, and failed to engage in the proper analysis at all. But here, under the proper analysis, the mandatory directory analysis, it's clear that this was a directory statute. This Section 3816 has no negative language at all. And in fact, it couldn't in light of the Porter and Davis cases that we cite, because otherwise it would implicate separation of powers concerns, because what it would be is the legislature telling the courts precisely the manner in which they must rule, what they must say at any given point. And that, as Porter and Davis recognized in the criminal context, cannot be done. The statute also is directory because the rights that are intended to protect, particularly the rights on appeal, are not in any way injured by a directory reading, because the statute is intended to ensure that there is a clear finding by the trial court, which there was. The court found that the evidence was sufficient. The court entered a written judgment detailing what the rule, what medication should be given to the respondent at what particular rate and time. And the appellate court had the ability, although the respondent never sought it, the appellate court had the ability to review that to determine whether or not it was sufficient. And importantly, as this Court has held in every case that it had ever looked at, the rationale of the trial court is not the basis of the appellate, of the reviewing court's review of the matter. Instead, it is the judgment itself. It is not bound by the rationale. It is bound by the judgment. And so whether or not the appellate, whether or not the trial judge gave a very specific finding or a more general one, as here, is not really relevant to the Respondent's ability to appeal her case. And for that reason, we would ask this Court to reverse the appellate court judgment and to either dismiss the appeal as moot or to affirm the trial court in the order of granting the petition for involuntary medication. Thank you. Thank you, Counsel. Ms. Spahn. May it please the Court. My name is Laurel Spahn. I'm an attorney with the Illinois Guardianship and Advocacy Commission, and we are the Our office was also the court-appointed trial counsel in this matter. Ms. Rita P. was 51 years old at the time symptoms that were perceived as symptoms of mental illness struck her. She had never been admitted to a mental health facility until one month before the hearing that is the issue of this case. She has, I'm sorry, contrary to what Mr. Spellberg said about an extensive history of mental illness, she was never before diagnosed with a mental illness. She started out at Evanston Hospital with no insurance, was transferred to Chicago Reed Mental Health Center. Never took psychotropic medications before, and this, at age 51, having been an adult, was facing her very first ever proceeding in mental health court. This court recognizes that there is a fundamental liberty interest in the right to refuse medication. And this is partly in the CE case where this court first found the involuntary treatment statute to be constitutional. This court found the involuntary treatment statute to be, I'm sorry, did I say unconstitutional? I'm sorry, I meant constitutional. Excuse me. This court found in CE that the involuntary treatment statute was constitutional because of the very specific criteria for medication. There are several criteria, each of which must be shown by clear and convincing evidence at a hearing, before a judge, before the state can interfere with a person's liberty, with their autonomy to decide what kind of medicines is going, will enter their body. So I want to first talk about a mandatory construction of Section 3-816A. A mandatory construction of the findings requirement is warranted because a directory reading would generally injure the interests protected by the Mental Health Code. And first of all is the respondent's liberty interest. The findings that a court must go through help the court apply the law, make sure that each and every element is found by clear and convincing evidence. It keeps the court honest. It makes sure that the order that is taking away the right to refuse is not entered for paternalistic reasons or as a rubber stamp of the treating doctor's recommendation. It also provides, a directory reading would also injure notice to the respondent of the why, the reason why this right is being taken away from her. I think all the reasons you're giving are good for those findings, but how do you respond to the State's argument that there's no negative consequence for failing to do it and that we should review the evidence as opposed to what the judge said? Well, the cases discussing mandatory versus directory talk about how there has to be either the negative language that there can't be further action if the statutory provision is violated, or there is going to be an injury to the interests protected by the statute. So in this case, no, the statute does not provide a consequence for if no findings are given. But there is also no further action at that point. That's the end of the road. When the hearing is over and the judge is entering findings, it's not as if there's any further action that is going to be taken. So I think the important thing here is that this generally injures the liberty interest under the Mental Health Code by failing to specify that all of the elements have been met, which this Court recognized in CE as a reason why the statute is constitutional. Is there a requirement under this section for specific provision that the trial court recite the necessary findings it makes before ordering this treatment of medicine? And why should we conclude that Section 3-816A is mandatory if there is no specifics? Well, there is the very specific Section 2107.1, which is the involuntary medication statute. And it sets out all of the different requirements before a person can receive medication. And, for example, one of the requirements is a three-part requirement, one of the criterion for involuntary treatment. And that's the criterion that the State prove one of three things. Either deterioration of the ability to function as compared to the ability to function prior to the onset of symptoms, or threatening behavior, or suffering, exhibiting suffering behavior. So without the findings, there's no way to know which of those three has been shown by clear and convincing evidence. But does the statute require it? The statute requires only under Section 3-816A the findings. And those Article 8 provisions related to hearing also apply to the involuntary treatment statute. So that's what we're relying on. Has the Respondent's ability to pursue this appeal been adversely affected? And if so, how? It has been, and partly because of the lack of findings, there was no sufficiency argument made in this case. Part of the reason for that was that the judge's findings were basically, I find in favor of the State. So there was no consideration, for example, of which of those three elements of the second criterion for medication was shown by clear and convincing evidence. Can I ask you this? It's really a two-part question. First, there's a petition that was filed, a five-page petition that is verified by the doctor, correct? And each one of the elements that you're just talking about, he provides a paragraph about each one of the elements. So, for example, this issue about deterioration, suffering, and threatening behavior, the doctor in his petition puts in facts about her, for example, threatening that she took a shooting class, she bought gasoline, all those kind of things. But under each one of these elements in the petition, the doctor has put in that information. Then the doctor testified. And then the trial court finds that the evidence that he heard was overwhelming. What else did the trial court have to do, in your opinion, to satisfy the statute? I think the trial court had to at least distinguish whether one or all of those three, the three-part criterion for deterioration, threatening, or suffering. The trial court needed to explain the basis whether one or all of those were met. And the evidence in the record shows that the information about alleged threatening behavior happened long before the medication petition and the hospitalization that is the subject of this proceeding, approximately nine months to a year before. The evidence of deterioration, reading through the transcript, you see that this woman was conducting a business during a time period where she was alleged to have some symptoms of mental illness. She filed for bankruptcy on her own. She filed for general assistance. She closed her business. She was even elected as a treasurer of a community board. So this is a person who was functioning. This is a person who was functioning. And there is no evidence during hospitalization that she is exhibiting any kind of deterioration. In fact, the evidence was that she was... This is your argument. This may be sufficient as the evidence. But again, going back to what the question is, there was evidence as to deterioration, suffering, and threatening behavior. There was evidence that was presented. The trial court found orally that the evidence was overwhelming. What else did the trial court have to say to satisfy the statute as far as you can see? Well, I think based upon CE and the idea that we don't want to, as a State, involuntarily medicate someone unless each and every element of the statute is shown by clear and convincing evidence, then I think the liberty interest requires at least that information to say, here is the evidence to support deterioration, or here is the evidence to support threatening, or here is the evidence to support suffering. And I would point out that there was one question only asked about suffering, and the doctor gave an opinion that, well, based upon something that happened a year ago, I would say she's suffering. Being embodied by spirits and being spiritually raped and all that kind of thing? Is that the testimony? The doctor's testimony, I think, there was one question asked towards the end of the hearing, and the doctor said based upon the alleged choking behavior, which was about a year before the trial, I think she must be suffering. I would also point out that this is notice to the respondent of the reason why. Would you agree, counsel, that the appellate court is somewhat short of analysis? I mean, almost, as Mr. Stalberg would say, that it was per se finding that it's mandatory? I would not say that it's a per se. I thought he used the word per se with respect to the case. I would say that the appellate court is strictly construing Section 3-816A and saying that... All right, let's put it this way. Would you agree that we have to look at our mandatory directory jurisprudence in determining the issue in this case? I don't know the answer to that, because this is kind of new territory in civil mental health proceedings. There's always been the consideration of strict compliance with the statute, and the concept of mandatory versus directory has not come up until recently. If we find this appeal is moot, do we need to address the mandatory directory argument? If you find this appeal is moot, then no, you would not have to. I would happily address the mootness exceptions. I just would like to cover a few more points with respect to the findings. Let me get back to this. Let's put it this way again. If we determined we have to look at our mandatory directory jurisprudence, there's two ways you can fit in. Either the negative language, which you agree is not there, and I believe what you're saying is that the right that the provision is designed to protect, I think you would say, because I've heard it a number of times, is this liberty interest, right? That's one of them. I'd like to talk about some of the other injuries. And when you do, talk about how those liberty interests or these other rights that you're going to bring up now aren't adequately protected in an appeal that would rule on the sufficiency of the evidence and the ability to review the trial court's ultimate decision, right? You understand what I'm saying? I do. I also want to point out that if the collateral consequences exception is as the State suggests, there wouldn't be any review of sufficiency of the evidence in a case like this. So the State is making a little bit of a circular argument. We could not, if as the State claims, collateral consequences would not apply to a situation where a respondent has a temporary hospitalization, then no, a sufficiency of the evidence argument is never going to be permitted, because according to Alfred H.H., that's fact-specific, and only the collateral consequences exception is going to apply to that. The respondent would have to raise a legal issue to be able to come under the public interest exception or the capable of hearing exception. But as far as a directory reading, generally injuring the rights protected under the code, I've talked a bit about the liberty interest. I wanted to talk about the notice to respondent. The statutory scheme of the Mental Health Code provides notice to respondents at every step along the way to hearing. There's notice of hearing, notice of rights, notice of proposed medications, notice of alternatives. And the court's reasons for then entering an order is the final and logical conclusion to that notice process, because we are dealing with people here who are not criminals, they have a mental illness through no fault of their own, and the benefit of that final notice is quite valuable. Studies show that respondents value the process more so than the outcome. If the respondent feels that she has been treated fairly and with respect, and then the court explains its reasoning, that allows a respondent to come to terms with the decision. And anecdotally, many times we have had clients say after a situation like that, okay, I'll take the medication. It also prevents appeal, because if the respondent understands, feels respected, feels that everything was fair and a decision was made and explained, that respondent is less likely to be one who wants to appeal. It's the person who feels disrespected and unsure of what just happened who says, well, I'm going to exercise my right to appeal. So the notice to the respondent is very important. Notice for purpose of appeal is also important. The U.S. Supreme Court said in Riggins v. Nevada that no findings require a reviewing court to divine the trial court's logic as best as it can from the record. So that, of course, is another difficulty. There is also a concern with notice to others as if threatening is alleged in a medication petition, if threatening is found, that can affect licensing rights, a FOID card. So these are all concerns that reflect directly on the need for findings. Mental health cases are parents' patriotic cases. So the Madison H. case is really closer to these cases than the criminal cases that the state cites. If findings are mandatory in mental health cases, that section of federal law is not. It affects all respondents, not just a few, like in the DelVillar case. If findings are mandatory in mental health cases, it's not going to be harmful like it could be in the M.I. case, which this Court noted could reflect on the ability to get a continuance or it could cause delay. If findings are mandatory in mental health cases, it would not implicate a separation of powers issue. Turning just briefly to the collateral consequences exception to mootness, this Court said five years ago in Alfred H.H. that Alfred H.H. didn't qualify for collateral consequences because he had prior involuntary mental health orders. He had a prior felony conviction. Does a respondent who has appealed have any past involuntary orders? It's the adjudication. It's the adjudication that causes the collateral consequences to attach for the first time. Does the respondent have any past felony conviction? If either of those two things are present, then collateral consequences don't apply. That's not the situation here. Rita P. is no Alfred H.H. The fact of a voluntary admission does not bring... The fact of a voluntary admission does not mean that collateral consequences have attached. Voluntary admission is the preferred method of treatment. That's reflected in the Hays case. That's reflected in the public policy. It is a private record if a person is voluntarily admitted. The Mental Health and Developmental Disabilities Confidentiality Act provides that records are confidential, including court records. A voluntary admission is not some kind of a public acknowledgment of mental illness. So based on that, if there are any other questions, I would be happy to answer them. I said I don't think there are any other questions. I would ask this Court to kindly affirm the Appellate Court and find that 3.816's findings requirement is mandatory. Thank you. Thank you. Very briefly, Mr. Sober, before you're briefed, I'm curious about something. The people often stands here when there's a mootness question, and although acknowledging that the case may be moot, ask this Court to go to the issue. In this case, you've done just the opposite. You spent probably 60 to 70 percent of your initial argument arguing mootness. So I assume you're thinking there is a greater good or a worse harm, putting it the other way, in determining that this case isn't moot, that it somehow does particular violence to mootness jurisprudence and feel that what I would assume is your position that two outlier cases, from your perspective, from the Fifth District, can be allowed to stand on this issue. Yes, Your Honor, thank you for letting me clarify that point. The reason why the primary argument that I'm presenting in this case is in regards to the collateral consequences exceptions of the mootness doctrine is because, from our perspective, it does seem to be violence, to use your term, Your Honor, to be doing violence to this Court's mootness doctrine. In Alford H.H., this Court was very clear that mootness is an important factor to the court's jurisprudence, to reviewing court's ability to resolve a case, and that reviewing courts must look for actual exceptions to the mootness doctrine. They shouldn't presume them in any way. And yet that's exactly what's going on in these mental health cases. The Court was clear in Alford H.H. that there are no general mootness exceptions for mental health cases. But the appellate court in many cases, but this case in many other cases, has found what appears to be a per se general exception to mootness. And all we're asking for is a clarification that the presumption of a collateral consequence doesn't apply. Instead, the proponent of the court's ability to hear the case, the proponent of the justiciable matter, demonstrate what those collateral consequences are. Precisely what the U.S. Supreme Court said in Spencer, precisely what this Court indicated in Alford H.H., and is consistent with its other doctrine, its other case law regarding mootness, in particular the Hernandez case, where this Court stressed that the State's argument demonstrating the public interest exception wasn't sufficient, that they couldn't demonstrate it. That's the reason why we're here. As an appellate lawyer myself handling a lot of appellate cases, I see the mootness cases coming up quite frequently, and I see the appellate court often just ignoring and just assuming that there is a way around the mootness. And in order to maintain the court's jurisprudence and to maintain the appellate court's jurisdiction, I believe it is important that this Court look at the mootness doctrine. And that's why I'm offering that as the primary argument. The secondary argument regarding the scope of the or the propriety of the trial judge's It's our position, and it was our position in the appellate court below, that if the matter is moot and if there are no collateral consequences, then the court shouldn't be reaching it at all. It doesn't need to reach it. The appellate court shouldn't have reached it because if there's no collateral consequences, then that exception wouldn't apply. As I said earlier, the capable repetition yet evading review wouldn't apply in this case because that claim that was raised in the appellate court is fact-specific. It is not really a legal interpretation of any sort. And then the public interest exception, at the time that this case was pending in the appellate court, there were absolutely no cases in any way addressing any contrary ruling regarding the scope of Section 3816. The law was not in any disarray. And as this Court said in Hernandez, the most important factor of the public interest exception is that there be law in disarray. In Hernandez, it said even a case of first impression doesn't satisfy that. In this case, there were multiple cases which counsel cited in the appellate court saying that what the trial judge's oral statement here was insufficient under Section 3816. We acknowledged in the appellate court that those cases stated that. And a pronouncement on mandatory directory of 816a is saved for another day if indeed there would be a case that gets through the system that would not be moved? Yes. Yes, if that were the case. But as we acknowledge in our reply brief, based upon the appellate court's ruling in this case, based upon this Court's granting of the PLA, this case probably satisfies the public interest exception because the law is now in disarray based upon what happened. It is our position in light of the Porter and Davis cases and the MI cases, we say this specifically in our reply brief, I think it's on page 12, recognizing that. But the problem here is that we have an appellate court published opinion and many published opinions specifically deciding a very broad scope of the collateral consequences exception, and that has greater ramifications than this particular mandatory v. directory dichotomy. And so that's why we're pursuing that. Regardless, you'd like some statement as to the collateral consequences? I believe that we need it, Your Honor, yes, because my reading of the appellate court's ruling in this case, of the cases that it relied on for the essentially per se ruling regarding collateral consequences, cannot be reconciled with the Alfred H.H. case. This Court was clear in that case that appellate courts must be vigilant about their jurisdiction, and a per se finding of collateral consequences in mental health cases is not consistent with that. But getting to the statutory issue, a couple of points I'd like to make. Counsel stated that at the time of the trial judge's ruling, his oral statement, no further action was available. Well, that's just blatantly not true. Counsel was there at the time. No objection was made at the time. And as we cite in our brief in the In Re Now case, this Court has held that procedural violations, which could have been objected to, which could have been cured at the time without any hindrance, do not amount to a basis for relief. And the Now case and the Hays case are perfect examples as to why the claim of mandatory v. directory dichotomy is not new territory, as Counsel said, but is actually very old and understood manners of statutory construction. Admittedly, neither Now nor Hays use the terms mandatory v. directory, because those are more modern terms this Court has identified. But the analysis that both courts engage in, in Now the Court was engaging whether or not there was a proper timely compliance with the timeliness requirements of an involuntary commitment. In Hays, it was dealing with whether or not the defendant's rights or the Respondent's rights to a voluntary commitment were being injured in any way. And in both cases, the analysis that this Court engaged in was identical to the mandatory directory analysis that was engaged in in DelVillar and MI. In regards to the claim that notice must be given, I would point the Court to the written order that appears in this record. The trial court entered a written order specifically informing not only the Respondent but the doctors in this case and anyone else who might need to know precisely what the Court's ruling was. Notice was clearly given. The only thing which Respondent doesn't know is what was going on in the judge's head when he said the evidence was overwhelming. Well, I think that we can all draw from the fact that he found the evidence to be overwhelming, and that was sufficient. I would also just point out, in terms of the Madison H. case, which is cited in the briefs and was relied on by the appellate court and cited by Counsel here, Madison H. involved a very similar statute. There was no argument regarding mandatory versus directory in that case at all. It was not presented in any way. But more importantly, it was a juvenile case involving what findings the judge should make in informing the parents what they need to do in order to be able to get their children back. There were ongoing proceedings in that point. And so as this Court held, in particular Justice Kilbride's concurrence in that case, recognized that the necessity of specific findings by the judge in that case were important so that way the parties could know what was going to happen next. It was not a case where there was a final judgment which would then be appealed at that point. It was a case where the Court's ruling regarding what was going to happen with these parents and these children, what would happen next. And so the specific findings under the statute in Madison H. were necessary. The rights that were, that had to appear, that were being protected, were necessary to be enforced by the specific findings. And it's for that reasons and for all the reasons here that we would ask this Court to clarify the collateral consequences, mootness exception, and to further rule that Section 3816 is directory as opposed to mandatory, and to either reverse the appellate court, to reverse the appellate court in either way as that it should have been dismissed as moot, or to reverse it that it was wrong on its construction of 3816. Thank you. Thank you. Mr. Spellberg, Ms. Bond. Case number 115798 is taken under advisement as agenda number three. Thank you for your arguments today. Mr. Marshall, the Illinois Supreme Court stands adjourned until tomorrow, March 12th at 930 a.m.